IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RENEWABLE ENERGY
EQUIPMENT LEASING, LLC,

    Plaintiff,

    v.                                                  Civil Action 2:14-cv-2687

                                                        JUDGE MICHAEL H. WATSON
TEAM GEMINI, LLC, et al.,               Magistrate Judge Jolson

    Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment as to damages as supplemented (Docs. 127, 132). By Order dated August 14, 2017 (Doc. 118), this Motion was referred to the undersigned Magistrate Judge for the issuance of a Report and Recommendation. For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.

    I.      PROCEDURAL BACKGROUND

Plaintiff Renewable Energy Equipment Leasing, LLC ("REEL") filed this action against Team Gemini, LLC ("Team Gemini") on December 19, 2014, asserting claims for breach of contract, promissory estoppel, quantum meruit, and declaratory judgment. (Doc. 1). On August 3, 2015, REEL amended its Complaint to add Gemini Holding I, LLC ("Gemini Holdings") and Team Gemini Project Cardinal ("TGPC") as defendants. (Doc. 27).

The events giving rise to the current Motion are set forth in Judge Watson's August 14, 2017 Order (Doc. 118), and will not be repeated in detail here. Briefly, however, Defendants Team Gemini and TGPC failed to object to an earlier Report and Recommendation (Doc. 109)

recommending that the Court enter default judgment against them and Gemini Holdings for numerous failures to respond to Court Orders. Consequently, Judge Watson adopted the Report and Recommendation and referred the matter of damages to the undersigned. Following a status conference at which neither Team Gemini nor TGPC appeared, the undersigned ordered summary judgment motions to be filed on the issue of damages (Doc. 123). By Opinion and Order dated November 9, 2017, the Court dismissed with prejudice REEL's claim against Gemini Holdings (Doc. 125).

REEL filed its Motion for Summary Judgment on November 20, 2017, and, as directed by the Court, supplemented the motion on January 12, 2018. Neither Team Gemini nor TGPC filed a response or a motion for summary judgment. The Court's mailings to Team Gemini have been returned as undeliverable. (*See, e.g.*, Docs. 120, 126, 128, and 131).

## II. LEGAL STANDARDS

When a defendant is in default, the well-pleaded allegations of the complaint as to liability, but not damages, must be taken as true. *United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007). Rule 55(b)(2) governs all cases in which a court enters a default judgment. *Zuffa, L.L.C. v. Holtsberry*, No. 3:12-cv-1191, 2013 WL 183861, at *2 (N.D. Ohio Jan. 17, 2013). If a plaintiff's claim on which default is entered is not for a sum certain or a sum that can be made certain by computation, an evidentiary hearing generally is required. Fed. R. Civ. P. 55(b)(2). However, an evidentiary hearing is not required "'if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits.'" *Ayers v. Receivables Performance Mgmt., LLC*, No. 2:15-cv-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016) (quoting

*Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271, n.8 (E.D. Pa. 2014)); *see also Servpro Indus., Inc. v. Santoro & Sons Enter., Inc.*, No. 3:15-cv-00608, 2017 WL 1331434, at *1 (M.D. Tenn. Apr. 11, 2017) (hearing not required if moving party submits uncontested, sworn affidavits sufficient to establish damages amount).

Also relevant here, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Further, "'Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion … is unopposed.'" *J&J Sports Prod., Inc. v. Tonita Rest., LLC*, No. 5:13-CV-382-REW, 2015 WL 9462975, n.5 (E.D. Ky., Dec. 28, 2015) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014)). Rather, the court is still required to "'ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed….'" *Id*. The court, however, "is not required to conduct its own probing investigation of the record to discover an issue of material fact when a summary judgment motion is unopposed." *Metropolitan Life Ins. Co. v. Darkow*, No. 5:09CV02482, 2010 WL 3002032, at *3 (N.D. Ohio July 30, 2010) (citing *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399,

407 (6th Cir. 1992)). At the same time, the court must "'carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy … for a silent party.'" *Id*.

III. **FACTUAL BACKGROUND**

The following information is taken from REEL's Amended Complaint with attached exhibits (Doc. 27), the affidavit of REEL's sole member and manager, Peter Micciche, submitted in support of the Summary Judgment Motion (Doc. 127-1), and the documents attached to REEL's supplement to its summary judgment motion. (Doc. 132).

At the time the Amended Complaint was filed, Team Gemini was a sustainable project design and development company, with an ownership interest in a variety of projects in the United States and other countries, with an emphasis on renewable energy. (Doc. 27, ¶ 6). Team Gemini was the sole member of TGPC. (*Id*. at ¶ 7). TGPC was in contract with the Solid Waste Authority of Central Ohio ("SWACO") to build a recycling center referred to as "COR3 Facility." (*Id*. at ¶ 8). As TGPC's controlling member, Team Gemini controlled the development of the COR3 Facility. (*Id*. at ¶ 9).

In 2010, REEL began providing a variety of services to Team Gemini, including services related to the COR3 Facility project. (Doc. 27, ¶ 10). In October 2011, Team Gemini and REEL entered into a non-disclosure agreement pursuant to which REEL completed substantial work on Team Gemini's projects in 2010, 2011, and 2012. (*Id*. at ¶ 11).

REEL and Team Gemini entered into an agreement on October 23, 2012, for REEL to provide certain financial and advisory services to Team Gemini. (Doc. 27, Ex. A). The contract provided that REEL was to be compensated in an amount equal to one percent of the aggregate

4

principal amount of any Team Gemini financing closed during the contract period. (*Id*.). REEL was also to be compensated for advising Team Gemini with respect to equipment purchases or service contracts in an amount equal to one percent of the aggregate amount of any such contracts. (*Id*.).

In May 2013, Team Gemini purported to terminate the agreement. (Doc. 27, ¶ 18). REEL rejected a proposed new agreement, but Team Gemini continued to seek REEL's services regarding the COR3 Facility project and other projects. (*Id*. at ¶ 20). REEL continued to provide services to Team Gemini through 2014. (*Id*.). REEL devoted thousands of hours to Team Gemini projects and passed on other lucrative economic opportunities, relying on Team Gemini's representations regarding compensation. (*Id.* at ¶ 32). Although Team Gemini was aware that REEL expected to be paid, it has refused to do so. (*Id*. at ¶¶ 37–38).

REEL provided the services as contracted. (Doc. 127-1, ¶ 5). Indeed, during the effective time period, Team Gemini or its affiliates closed up to twelve financing transactions totaling an estimated $10,250,000. (*Id*. at ¶ 7). Further, REEL advised Team Gemini or its affiliates on at least one major equipment purchase contract worth $37,000,000. (*Id*. at ¶ 8). Additionally, REEL advised Team Gemini or its affiliates regarding nine service contracts totaling $100,000,000, resulting in compensation due to REEL in the amount of $1,000,000. (*Id.* at ¶9).

Additionally, REEL assigned eight employees to work on the Team Gemini SWACO project. (Doc. 132-2, Appendix 1B PAGEID #: 577). These employees included Robert Green, EVP Capital Markets; Michael Bryan Casey, VP Capital Markets, Commercial Real Estate; Terry Wrazin, SVP Technology; Jaycee Brock, Administrative Assistant; Nicholas Micciche,

VP Engineering, PE; Charity Swift, Executive Administration/Marketing; Jeremy Dipple, AVP Credit/Marketing; and Peter T. Micciche, President/CEO. (*Id*.). All of these employees, with the exception of Mr. Green, devoted either a portion or all of their professional time to the SWACO project for a 36-month period. (*Id*.). Mr. Green, however, was hired for a 31-month period to work exclusively on the SWACO project. (*Id*. at PAGEID #: 578). Providing the contracted services required these employees to travel, evaluate potential investment bankers and their proposed financing arrangements, review various financial documents to assess projects' viability, and identify other equipment and service providers. (Doc. 127-1, ¶6). REEL incurred significant out-of-pocket expenditures in performing its contractual duties. (*Id*.).

Consequently, Plaintiff asks this Court to grant its Motion for Summary Judgment and award REEL damages against Team Gemini and TGPC, jointly and severally, in the amount of $1,725,000. (Doc. 127 at 5).

## IV. DISCUSSION

### A. Liability and Damages

Taking the well-pleaded allegations in REEL's complaint as true, REEL has established liability under either its breach of contract claim or its alternative claims of promissory estoppel and quantum meruit. As explained above, REEL asserts that it is entitled to damages in the amount of $1,725,000 against Team Gemini and TGPC, jointly and severally. However, as previously noted, although REEL's damages calculation is unopposed, consistent with the requirements of Rule 55, the Court must determine whether REEL sufficiently has supported its requested damages amount. In doing so, the Court is mindful that REEL is not entitled to double recovery for the same loss, even though it has alleged different theories of liability in the

6

complaint. *See*, *e.g.*, *Kramer Consulting, Inc. v. McCarthy*, No. C2-02-116, 2006 WL 581244, at *5 (S.D. Ohio Mar. 8, 2006) ("The law abhors duplicative recoveries" and an injured plaintiff is "entitled to be made whole, not enriched").

Upon an independent review of the evidence, the Court is satisfied that REEL has provided sufficient documentation to support an award of damages in the amount of $1,455,521, rather than $1,725,000. In calculating this amount, the Court considered both Mr. Micciche's affidavit (Doc. 127-1) and the supplemental information (Docs. 132-1, 132-2) submitted by REEL. According to these documents, REEL paid its employees $1,435,000 for time devoted to the SWACO project.[1] (*See* Doc. 132-2, PAGEID #: 577). Further, REEL incurred foreign travel expense in an amount totaling $20,521 for a trip to China and Korea (*id.*, PAGEID #: 580), and Mr. Green, Mr. Casey, and Mr. Wrazin incurred employee expenses of $119,121. (*id.*, PAGEID #: 581–85). Although REEL submitted additional information relating to other employee expenses, including benefits and monthly expenses, the Court finds this documentation insufficient to support additional damages because it was unaccompanied by any receipts, did not provide any explanation as to the nature of the expenses incurred, and, in some instances, described the expense as "estimated." (*See, e.g.*, Doc. 132-2, claiming "Estimated Benefits" total $294,600).

B. Piercing the Corporate Veil

---

[1] The Court notes mathematical errors in REEL's Appendix 1A. According to REEL's chart, Ms. Swift's annual salary was $52,500 and she devoted 30% of her time to the SWACO project over the three-year period. This results in total compensation in the amount of $47,250 for Ms. Swift, not $94,500. Similarly, Mr. Dipple's annual salary was $65,000 and he devoted 70% of his time to the SWACO project over the three-year period. This results in total compensation in the amount of $136,500 for Mr. Dipple, not $58,500. Additionally, Appendix 1A includes Mr. Green's salary as if he had been paid for 36 months. The additional documentation, however, states that Mr. Green was employed for only 31 months, earning a total salary of $426,250. *See* Doc. 132-2, PAGEID #: 578.

REEL also asserts that, to the extent that Team Gemini has insufficient assets to satisfy the judgment, it should be permitted to pierce the corporate veil of Team Gemini and its affiliates in order to recover this damages award. According to REEL, Team Gemini's managing member exercised control over the company in a way that led to the unlawful dilution of REEL's interests in various other projects.

Initially, the Court notes that, while piercing the corporate veil is not a cause of action itself, "'it is a means of imposing liability … [and] each basis for piercing the corporate veil is an independent ground of recovery that must be specifically pleaded.'" *Allied Diversified Constr., Inc. v. Elite Mech., Inc*., No. 1:16-cv-334, 2016 WL 7034238, at *3 (S.D. Ohio Dec. 2, 2016) (quoting *Orrand v. Kin Contractors, LLC*, No. 2:09cv1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011)). Of note, REEL did not plead this theory of liability in its Amended Complaint.

Moreover, even assuming the Court could glean such a theory from the factual allegations in the Amended Complaint, the quintessential element a plaintiff must demonstrate in order to pierce the corporate veil is that "control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own." *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-cv-2407, 2016 WL 4573993, at *10 (S.D. Ohio Sept. 1, 2016) (citing *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc*., 67 Ohio St.3d 274, 275 (1993); *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 513 (2008)). Beyond this, a plaintiff must demonstrate an exercise of control resulting in fraud, or an illegal or unlawful act. *Id*. Finally, a demonstration of injury or unjust loss resulting from such control must be made. *Id*. REEL simply has provided no evidence from which the Court could conclude that veil-piercing is appropriate here.

8

For these reasons, the Motion for Summary Judgment will be denied to the extent that REEL seeks to pierce the corporate veil.

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment (Doc. 127) be **GRANTED** to the extent that Plaintiff be awarded damages in the amount of $1,455,521 and **DENIED** to the extent it seeks to exceed this damages amount or pierce the corporate veil. Consequently, it is **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 36(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision

of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:  January 23, 2018                              /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE